UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KARMEN LAKAY YOUNG,

*Plaintiff*,

v.

SCOTT TURNER,

*Defendant*.

Civil Action No. 23-2240 (LLA)

**MEMORANDUM OPINION**

Karmen Lakay Young brings this action against Scott Turner in his official capacity as the U.S. Secretary of Housing and Urban Development. ECF No. 16.[1] Ms. Young alleges that her former employer, the Department of Housing and Urban Development ("Department"), discriminated against her, created a hostile work environment, and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* ECF No. 16. Pending before the court is the Secretary's motion to dismiss, or, in the alternative, for summary judgment. ECF No. 17. For the reasons explained below, the court will grant the Secretary's motion and dismiss the case.

I.     FACTUAL BACKGROUND

The following factual allegations drawn from Ms. Young's amended complaint, ECF No. 16, are accepted as true for the purpose of evaluating the motion before the court, *Am. Nat'l*

---

[1] Because this is an official-capacity suit, Secretary Turner is automatically substituted in for his predecessor under Federal Rule of Civil Procedure 25(d).

*Ins. Co. v. Fed. Deposit Ins. Corp.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).  The court further takes judicial notice of documents from the administrative proceedings that were attached to the briefing, *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018) (explaining that "[i]n employment discrimination cases, courts often take judicial notice of [Equal Employment Opportunity Commission ("EEOC")] charges and EEOC decisions" in evaluating a motion to dismiss), and documents incorporated by reference into Ms. Young's amended complaint, *see Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015) ("A district court may consider a document that a complaint specifically references without converting the motion into one for summary judgment.").

Ms. Young is an African-American woman with a darker complexion and she is over forty years old.  ECF No. 16, at 1; *id.* ¶ 175.  From February 1995 to October 2013, she was employed at the Department in a variety of positions.  *Id.* ¶¶ 3, 10, 11, 15, 27, 40-41, 52, 151.  Ms. Young alleges that, during her tenure, she "suffered several incidents of assault, intimidation, [and] hostility that her superiors and management condoned." *Id.* ¶¶ 210, 217, 263.  Most notably, these incidents include: "handwritten notes threatening physical harm to her person," *id.* ¶ 54; the vandalization of her office cabinet lock, which "prevented her from gaining access to her work materials," *id.* ¶ 65; coworkers "deliberately walking into her and hitting her with [a] shoulder or elbow," *id.* ¶ 88; and coworkers addressing her by derogatory epithets, *id.* ¶ 140.  Ms. Young resigned from the Department in October 2013.  *Id.* ¶ 164.

Ms. Young thereafter sought to return to the Department and applied for two different roles—Counterparty Risk Analyst on April 1, 2015, and Executive Vice President & Chief Operating Officer on December 22, 2015.  *Id.* ¶ 177; ECF No. 17-3, at 10, 26.[2]  Unbeknownst to

---

[2] The page numbers cited are those generated by CM/ECF.

2

Ms. Young, the Department selected Madhavi Ananth for the Counterparty Risk Analyst position on April 15, 2015 and Nancy Corsiglia for the Executive Vice President & Chief Operating Officer role in March 2016.  ECF No. 16 ¶¶ 186, 196; ECF No. 17-8 ¶ 42; ECF No. 17-7, at 2.  Ms. Young learned of her non-selection on or about February 17, 2017.  ECF No. 16 ¶ 167.[3]

Also in February 2017, Ms. Young met with a former colleague, James Milhouse.  *Id.* ¶ 165.  Mr. Milhouse informed her that the Department's former Executive Vice President & Chief Operating Officer, Mary K. Kinney, had been spreading "degrading rumors that [Ms. Young] is/was a drug smuggler/dealer" before and after Ms. Young left the Department in 2013.  *Id.*

## II.     PROCEDURAL HISTORY

Ms. Young filed a complaint with the Department's Equal Employment Opportunity ("EEO") office in 2010, *id.* ¶ 150, but she later withdrew it, ECF No. 17-4.[4]  After she learned of her non-selection for the two positions she had applied for in 2015 and Ms. Kinney's derogatory comments, Ms. Young filed an informal complaint with the Department's EEO office on March 15, 2017, and she subsequently filed a formal complaint on May 20, 2017.  ECF No. 16 ¶ 5; ECF No. 17-5.  The Department accepted her two non-selection claims for investigation, but it dismissed for failure to state a claim her complaint that "members of management made derogatory comments about [her]."  ECF No. 17-6, at 2.  The Department issued a final agency decision finding against Ms. Young in May 2023.  ECF No. 16 ¶ 5.

---

[3] Ms. Young alleges that she was not selected for "three opportunities," ECF No. 16 ¶ 6-7, but she later explains that there were two avenues of applying for the Counterpart Risk Analyst position, *id.* ¶ 178.

[4] Ms. Young alleges that "[p]rior to [her resignation] in 2013, she filed at least two (2) previous EEO complaint(s) and/or grievances," ECF No. 16 ¶ 176, but she only points to the 2010 complaint that was later withdrawn, *see generally id.*; *see also* ECF No. 19, at 4 (discussing only her 2010 EEO complaint).

In August 2023, Ms. Young filed this action, alleging violations of Title VII and the ADEA. ECF No. 1. After the Secretary filed a motion to dismiss or, in the alternative, for summary judgment, ECF No. 7, Ms. Young filed an amended complaint in April 2024, ECF No. 16. The Secretary has now filed a renewed motion to dismiss or, in the alternative, for summary judgment, ECF No. 17, and the motion is fully briefed, ECF Nos. 17 to 22.

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion under Rule 12(b)(6), a court accepts all well-pleaded factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). Although the plausibility standard does not require "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will "'naked assertion[s]' devoid of 'further factual enhancement'" suffice. *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). While the plaintiff need not establish a prima facie case of discrimination at the pleading stage, *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002), she must allege sufficient facts beyond mere legal conclusions to allow the court to draw a reasonable inference of discrimination from the complaint. "If [the] plaintiff fails to plead 'sufficient factual matter' to state a discrimination claim that is 'plausible on its face,' then the district court should dismiss the case before

4

discovery." *Chambers v. District of Columbia*, 35 F.4th 870, 878 (D.C. Cir. 2022) (en banc) (quoting *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015)).

In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alteration in original) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)). As noted, the court may take judicial notice of Ms. Young's EEO materials without converting the Secretary's motion to dismiss into one for summary judgment. *Golden*, 319 F. Supp. 3d at 366 n.2.

## IV.   DISCUSSION

Ms. Young's nine-count complaint concerns two distinct categories of acts. First, Ms. Young challenges incidents that occurred during her employment at the Department between 1995 and 2013 (Counts II, III, V, and IX). She alleges that these incidents constitute discrimination, retaliation, and hostile work environment on the basis of her race, color, and sex in violation of Title VII (Counts II, III, V) and on the basis of her age in violation of the ADEA (Count IX). ECF No. 16 ¶¶ 209-21, 230-37, 262-67. Second, Ms. Young challenges her non-selection for two positions that she applied to in 2015 (Counts I, IV, VI, VII, and VII), which she alleges violates Title VII (Counts I, IV, VI) and the ADEA (Counts VII, VIII). *Id.* ¶¶ 205-08, 222-29, 238-61. In its motion to dismiss, the Secretary argues that Ms. Young failed to administratively exhaust either set of claims before bringing suit. ECF No. 17, at 11-16. The court agrees.

A plaintiff may not initiate a civil action under Title VII or the ADEA until she has exhausted her administrative remedies. 42 U.S.C. § 2000e-16(c) (Title VII); 29 U.S.C. § 633a(b)

to (d) (ADEA); *see Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 175 (D.D.C. 2016). The process for administrative exhaustion differs between Title VII and the ADEA.

Under Title VII, the exhaustion process begins when the federal employee "initiate[s] contact" with her agency's EEO counselor, which must be done within forty-five days of the alleged discriminatory or retaliatory act. 29 C.F.R. § 1614.105(a)(1). "Each discrete discriminatory act starts a new clock for filing charges alleging that act"—meaning that any claim arising out of an act not raised with an EEO counselor within forty-five days cannot be pursued. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). The forty-five-day rule differs slightly in the context of hostile work environment claims, which "are different in kind from discrete acts." *Id.* at 115. By nature, hostile work environment claims "involve[] repeated conduct" and "therefore cannot be said to occur on any particular day"; rather, they "occur[] over a series of days or perhaps years." *Id.* Accordingly, a hostile work environment claim is timely "[p]rovided that an act contributing to the claim occurs within the filing period." *Id.* at 117. But the act must be one that "contribut[es] to the claim," *id.*—that is, the untimely and timely actions must be "adequately connected to each other . . . as opposed to being an array of unrelated discriminatory or retaliatory acts," *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011).

Under the ADEA, the employee may follow Title VII's administrative process, or she may directly file suit in federal court. *See Lawson v. Sessions*, 271 F. Supp. 3d 119, 133 (D.D.C. 2017); 29 U.S.C. § 633a(d). If the plaintiff chooses to directly file suit, she must do so "within 180 days of the allegedly discriminatory act" and notify the EEOC of her "intent to sue at least 30 days before commencing suit." *Rann v. Chao*, 346 F.3d 192, 195 (D.C. Cir. 2003); *see* 29 U.S.C. § 633a(c), (d). Ms. Young does not contend that she directly filed her ADEA claims in federal court, so the court will analyze her claims under Title VII's exhaustion rubric.

The failure to exhaust administrative remedies is an affirmative defense, meaning that the defendant bears the burden to plead and prove the plaintiff's failure to exhaust. *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997). If the defendant meets his burden, then the burden shifts back to the plaintiff to "plead[] and prov[e] facts supporting equitable avoidance of the defense." *Id.*

### A.     Claims Concerning Ms. Young's Employment Between 1995 and 2013

The Secretary argues that Ms. Young failed to exhaust her claims that she was subjected to a hostile work environment from 1995 through 2013 because she never presented them to an EEO counselor. ECF No. 17-1, at 12-13. Ms. Young counters that the exhaustion process for hostile work environment claims is "less stringent." ECF No. 19, at 14. Ms. Young further contends that, after she learned of Ms. Kinney's comments in February 2017, she timely lodged an informal complaint with a Department EEO counselor, which suffices to exhaust the entirety of her hostile work environment claims. *Id.* at 15; ECF No. 16 ¶ 5.

As the Secretary points out, the fundamental problem with Ms. Young's argument is that the Department did not accept her claim about Ms. Kinney's derogatory comments. ECF No. 17-6, at 2; *see* ECF No. 17-1, at 13 n.3 (explaining that the Department did not accept Ms. Young's claim concerning Ms. Kinney's comments); ECF No. 22, at 2 (same). Ms. Young did not challenge the Department's decision not to accept this claim; accordingly, none of her allegations about hostile work environment are administratively exhausted. *See Cheatham v. Holder*, 935 F. Supp. 2d 225, 237 (D.D.C. 2013) (finding that the plaintiff had not exhausted non-selection claims that had not been accepted for investigation by the EEO office). But even if the Department had accepted her claim about Ms. Kinney's comments, Ms. Young cannot tie an event that she learned of several years after leaving the Department to a hostile work environment claim during her time

7

at the Department.  *See Cherichel v. Ergo Sols., LLC*, 85 F. Supp. 3d 245, 249 (D.D.C. 2015) (holding that "actions long after [a plaintiff] has left employment . . . do not constitute a hostile *work* environment so as to make timely [the plaintiff's] otherwise plainly untimely claim"); *see Clemmons v. Acad. for Educ. Dev.*, 107 F. Supp. 3d 100, 117 (D.D.C. 2015) ("[C]omments or incidents of which a plaintiff was unaware during the time of her employment cannot be used to establish that she was subjected to a hostile work environment.").  Accordingly, the court must dismiss Counts II, III, V, and IX.

### B.    Claims Concerning Ms. Young's Non-Selection

The Secretary argues that Ms. Young did not timely exhaust her non-selection claims because she applied for the positions in April 2015 and December 2015, the positions were filled in April 2015 and March 2016, respectively, but Ms. Young did not make contact with a Department EEO counselor until March 2017.  ECF No. 17-1, at 13-16.  As the Secretary correctly contends, the forty-five-day period for lodging an informal EEO complaint runs from the date the Department selected another person for each role.  *Id.* at 13-14; *see* 29 C.F.R. § 1614.105(a)(1) (directing that an aggrieved employee must initiate contact with an agency EEO counselor within forty-five days of the effective date of the personnel action).

In response, Ms. Young does not dispute that she failed to make contact with an EEO counselor within forty-five days of the Department's selection of a different candidate for each position, ECF No. 19, at 11, but she argues that the forty-five-day requirement "should be waived or tolled under 29 C.F.R. § 1614.105(a)(2) because 'she did not know and reasonably [could not have] known that the discriminatory matter or personnel action occurred" before she learned of her non-selections in February 2017.  ECF No. 19, at 11 (quoting 29 C.F.R. § 1614.105(a)(2)).  In support of her argument for equitable tolling, Ms. Young argues that, after she applied for the

8

positions in April 2015 and December 2015, she was "diligently . . . checking her email and usa.jobs webpage" for updates, but the Department never informed her that she had not been selected. ECF No. 19, at 12.

"The party seeking equitable tolling bears 'the burden of pleading and proving in the district court "equitable reasons" for noncompliance with the [forty-five] day requirement.'" *Vasser v. McDonald*, 228 F. Supp. 3d 1, 14 (D.D.C. 2016) (quoting *Bayer v. U.S. Dep't of Treasury*, 996 F.2d 330, 333 (D.C. Cir. 1992)). Equitable tolling is to be used "sparingly," *Morgan*, 536 U.S. at 113, and "only in 'extraordinary and carefully circumscribed instances,'" *Harris v. Gonzalez*, 488 F.3d 442, 444 (D.C. Cir. 2007) (quoting *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 580 (D.C. Cir. 1998)).

The court concludes that Ms. Young has not carried her burden. To begin, Ms. Young does not allege in her complaint or explain in her opposition brief how she came to learn of her non-selections in February 2017, so the court cannot evaluate whether she could have learned of her non-selections sooner had she been more diligent. ECF No. 16 ¶¶ 7, 167; *see generally* ECF No. 19.[5] What is more, crediting Ms. Young's assertion that the Department failed to notify her of her non-selection for the two positions, periods of nearly twenty-two months and fourteen months elapsed between when Ms. Young applied for the positions in April 2015 and December 2015 and when she learned of her non-selection in February 2017. Courts have declined to toll the forty-five-day timeline because similar delays reflect a lack of diligence. *See*

---

[5] In her Statement of Undisputed Material Facts in response to the Department's alternative request for summary judgment, Ms. Young states that after her February 2017 meeting with Mr. Millhouse, where she learned that Ms. Kinney had made disparaging remarks about her, she "did research" and learned of her non-selection. ECF No. 19-1, at 14. The court will not consider this assertion because it is ruling on the Department's motion to dismiss, not its motion for summary judgment. But were the court to consider this fact, it would cut conclusively against a showing of diligence.

*Vasser*, 228 F. Supp. 3d at 15 (declining to equitably toll where "even if she never received notice, at least 15 months passed between [the plaintiff's non-selection] and her initial contact with an EEO counselor"); *Belton v. Shinseki*, 637 F. Supp. 2d 20, 24 (D.D.C. 2009) (declining to toll when thirteen months passed between the plaintiff's non-selection and his initial contact with an EEO counselor). Accordingly, the court will dismiss Counts I, IV, VI, VII, and VIII.

## V.   CONCLUSION

For the foregoing reasons, the court will grant the Secretary's motion to dismiss. ECF No. 17. A contemporaneous order will issue.

LOREN L. ALIKHAN
United States District Judge

Date:   March 25, 2025